# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **ROBERT DEDMON** § | |
| § | |
| **Plaintiff,** § | |
| § | **CIVIL ACTION NO. 4:21-cv-03371** |
| v. § | |
| § | |
| **SHELL EXPLORATION &** § | |
| **PRODUCTION COMPANY AND** § | |
| **SHELL TRADING SERVICES** § | |
| **COMPANY** § | |
| § | |
| **Defendants.** § | |

## REPLY IN FURTHER SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submit this Reply in further support of their Motion for Summary Judgment (Dkt. 33) and in response to Dedmon's opposition to Defendants' Motion (Dkt. 41).

Dedmon's Opposition is littered with diversions, speculation, and improper evidence aimed to distract from the record and to avoid his own testimony that supports summary judgment in Defendants' favor. Here, Defendants will not multiply the Court's efforts by focusing on every fallacy presented in Dedmon's Opposition but will instead focus on the most prominent issues that demonstrate why summary judgment is appropriate in this case.

1

**I.    SOME OF THE INFORMATION DEDMON OFFERS IN OPPOSITION TO SUMMARY JUDGMENT IS INAPPROPRIATE/INADMISSIBLE AND/OR DEFECTIVE**

In his Opposition, Dedmon attaches several affidavits, including his own, that are either defective or are riddled with inadmissible speculation, hearsay, unsupported conclusory statements, contradictions, and statement that lack proper foundation. The question of whether testimony constitutes competent summary judgment evidence begins and ends with the requirements of Rule 56(e). *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir. 1994). Under Rule 56(e), conclusory statements lacking a specific factual basis, statements lacking foundation or personal knowledge, statements of opinion, hearsay, and statements that contradict prior sworn testimony are incompetent evidence for summary judgment purposes. *See Stephen v. Chotes*, 2016 WL 1730531, at *2 (E.D. Tex. Mar. 9, 2016) (citing *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir.2005)) ("The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence."); *see also Vallejo v. City of Del Rio*, 2011 WL 13269797, at *2 (W.D. Tex. Feb. 25, 2011) (stating that "general assertions and legal conclusions will not suffice" to defeat summary judgment). In deciding to award summary judgment in this matter, the Court should not consider any portion of Dedmon's proffered declarations and other items that include this type of inadmissible evidence.

2

**A.     Sri Rangan's declaration is unsigned and the email message purporting to act as a signature is not proper or authenticated**

29 U.S.C.A §1746 permits the use of unsworn declarations that meet certain requirements, including a signature from the affiant as well as a proper statement attesting under penalties of perjury that the information provided is true and correct and within the individual's personal knowledge. 28 U.S.C.A. §1746. Courts have routinely held that unsigned declarations are not proper summary judgment evidence. *See Banks v. Deere,* 829 F.3d 661, 668 (8th Cir. 2016); *Patterson v. O'Bar Wrecker Svc., LLC,* 685 F.Supp.3d 387, 394-95 (N.D. Tex. 2023).

In support of his Opposition, Dedmon offers an unsigned declaration from Sri Rangan. Dedmon also offers an email exchange purportedly between Rangan to his counsel as a proxy for her signature. Nothing in 29 U.S.C.A. §1746 or supporting case law permits the use of an email exchange as a substitute for a real signature. In addition, the email itself is defective because it is not authenticated. Accordingly, the Court should strike and disregard and strike Rangan's entire declaration because it does not comply with 29 U.S.C.A §1746.

Even if the Court does not strike and disregard Rangan's entire unsigned declaration, portions of the declaration are still objectionable because they contain inadmissible information, including hearsay, conclusory assertions, speculation, and assertions lacking proper foundation. The object of Rule 56 "is not to replace conclusory allegations of the complaint with conclusory allegations of an affidavit."

3

*Lujan v. Nat'l Wildlife Fed'n.*, 497 U.S. 871, 888, 110 S. Ct. 3177 (1990) (citations omitted). Rather, declarations opposing summary judgment must be specific and include sufficient factual support showing that the affiant actually possesses personal knowledge, as opposed to opinions. *See Amie v. El Paso Ind. School Dist.*, 253 Fed. Appx. 447, 451 (5th Cir. 2007) (*quoting El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995)); *Richardson v. Oldham*, 12 F.3d 1373, 1378 (5th Cir. 1994). A summary assertion or conclusory allegation in an affidavit is simply not enough proof to raise a genuine issue of material fact. *Id. (citing Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992); *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009)). Moreover, hearsay statements within declarations are not competent summary judgment evidence. *Okoye v. Univ. of Tex. Houston Health Science Ctr.,* 245 F.3d 507 (5th Cir. 2001). The following portions of Rangan's declaration violate these basic principles and, therefore, should be struck and disregarded:

| Declaration Paragraph | Defect |
|---|---|
| ¶¶ 7-13 | **Hearsay; contradicts and misrepresents contemporaneous records, including communications involving Rangan that describe the exchange with HR and Olmen; paragraphs 11 and 12 contain inadmissible hearsay regarding Olmen comments and Beth Boman comments.** |
| ¶¶ 16, 18 | **Hearsay; conclusory and misrepresents and contradicts contemporaneous records; also inadmissible hearsay regarding Olmen comments.** |

4

| | |
|---|---|
| ¶ 19 | **Conclusory, speculation and lacks proper foundation.[1]** |
| ¶ 20 | **Hearsay, conclusory and speculation.** |

**B.   Luis Lugo's declaration contains inadmissible speculation, hearsay, and conclusory assertions that lack proper foundation**

In his Opposition, Dedmon offers the declaration of another former Shell employee, Luis Lugo, that contains an excess of inadmissible evidence, including the following:

| Declaration Paragraph | Defect |
|---|---|
| ¶¶ 11-14 | **Conclusory and speculative statements lacking proper foundation; no specifics provided and no context explaining basis for assertions; mere opinions.** |
| ¶¶ 17-20 | **Conclusory and impermissible hearsay; example contains hearsay (regarding information from an unidentified White male) and is conclusory with no context; no context showing basis for assertions and knowledge.** |
| ¶¶ 21-24 | **Conclusory and speculative statements not based on personal knowledge and lacking proper foundation; no basis provided for claims about decisions on salary and job grades; no context for "higher ups" or basis for knowledge of rankings or roles or how Dedmon should have been ranked.** |

---

[1] Defendants are not suggesting that the investigation was or was not the reason for the job grade change in 2015. However, if the investigation was not the reason for the job grade and salary increase in 2015 and Dedmon received it on merit, then he hardly has a complaint about the decision to increase his job grade, which is what he claims he wanted in the first place. Conversely, if the investigation was a factor, then Shell corrected the issue by giving Dedmon the JG5 job grade and salary increase he wanted, again mooting any complaint Dedmon might have about the issue.

5

**C. Dedmon's declaration contains inadmissible speculation, hearsay, and conclusory assertions that lack proper foundation, as well as contradictions**

Dedmon's own declaration is also full of numerous deficiencies that should be struck and disregarded:

| Declaration Paragraph | Defect |
|---|---|
| ¶¶ 26-29 | **Hearsay, opinion, speculation, and lacks foundation, including statements about a childhood incident and racial slurs by other individuals.** |
| ¶¶ 32-38 | **Conclusory, opinion, misrepresents evidence, speculation, and hearsay including statements about impressions of Rangan's demeanor, comments Rangan made about her interactions with HR at Shell, support she gave him and comments Olmen allegedly made.** |
| ¶¶ 48, 51-53, 54, 56-57 | **Conclusory, self-serving, hearsay and speculative statements lacking proper foundation, including regarding individuals performing "the same duties" and some accounts being "easier than others" and Dedmon having the more difficult accounts on the team; also includes opinion testimony about Dedmon's beliefs and offers no foundation for his knowledge of the experience of others in his group.** |
| ¶ 59 | **Conclusory and speculative, including statements that the "only logical conclusion" is his race; also includes hearsay regarding what Rangan told him about an alleged downgrade based on race.** |
| ¶¶ 62-70 | **Hearsay, including statements regarding discussions Dedmon had with his supervisor about his career plans and the 2021 JG4 role; also speculation regarding what Dedmon would have done in allegedly different circumstances; and hearsay and conclusory regarding White peers allegedly moving to a different job grade and the basis for those moves.** |
| ¶ 73 | **Contradicts complaint, where Dedmon alleges knowledge that that his compensation was lower (see Dkt No. 14, para. 36).** |

| ¶¶ 75 | **Conclusory and self-serving statements, opinion, including about the cause of his alleged panic attacks and about alleged betrayals.** |
|---|---|
| ¶¶ 78, 79, 80 | **Conclusory statements and lacking proper foundation; also hearsay, including alleged circumstances with Rucker and Frnka, and discussions with wife; also opinion testimony about beliefs.** |

### D. Articles and Other Cases

In his Opposition, Dedmon also offers a 1996 article and charges from two unrelated matters that involve employees in different parts of the organization and complaints of national origin, age and religious discrimination, among other things. Dkt. No. 41, Appx 248-259.  Aside from questions of relevance, these items are objectionable and should be disregarded because they constitute and/or contain inadmissible hearsay.  For example, the 1996 article, which predates Dedmon's employment by almost two decades and refers to some events that occurred in the 1980s, includes statements about what individuals allegedly said about their experiences at Shell and another company, and about other lawsuits at Shell.  This is classic hearsay and has no place in the summary judgment record of this case.  Accordingly, the Court should strike and disregard them in their entirety.

7

## II. DEDMON'S OPPOSITION FAILS TO CREATE A GENUINE ISSUE OF FACT ON HIS CLAIMS

### A. There is no issue of fact on the untimeliness of Dedmon's pay claims – they are late and he has no excuse

Nothing in Dedmon's Opposition overcomes the fact that he admitted under oath that he was aware of the job grade change in 2014 and, even more, that he was suspicious of the change at the time – as he put it, his eyebrows raised. *See* Dkt. 33, Ex. B, 52:11-18; 59:14-17. Although Dedmon tries to argue that Shell concealed information related to its reasons for the change, the contemporaneous records and summary judgment evidence completely refute this position. As described in Defendants' Motion, Dedmon was aware of the other candidate who received an offer for the JG5 position and believed at the time that she was White.[2] *See* Dkt 33, Ex. B, 233:10-11, 233:13-234:8. In his Opposition, Dedmon confirms that he received information that he allegedly moved from the top choice to the second choice at some point, and then later that a JG6 position was being posted after an internal review. Most notably, Dedmon was admittedly suspicious of the change because of the information he had at the time. In other words, no reasonable jury could find that Dedmon did not (or should not or could not have) suspect(ed) discrimination when he admitted under oath that he was suspicious about what was

---

[2] Dedmon incorrectly argues that Shell misrepresented his statements about this knowledge of the individual who received the JG5 offer. The record reflects that he believed or suspected that the candidate was White at the time.

8

happening. Moreover, no reasonable jury could find that Shell concealed any information that prevented Dedmon from pursuing his rights if he wanted to. The contemporaneous records show the business reason for the job grade change and the lengthy exchange between HR and the business group about the basis for the change. *See* Dkt. 33, pp. 3-5, including cited exhibits. The records (including Rangan's own communications) even show that the allocation of job grades in the group was a debated topic long before Dedmon came along and long before he was considered for a position. *See* Dkt. 33, p 5, including cited Exhibit C at ShellDedmon_000744. Nevertheless, Dedmon clings to the untenable position that anything short of an admission of discrimination constitutes concealment. That is not the law. *See Borderlon v. Peck,* 661 S.W.2d 907, 908 (Tex. 1983) (describing application of estoppel and fraudulent concealment when defendant has a duty to disclose but conceals facts of the cause of action); *Exxon Corp. v. Emerald Oil & Gas Co.,* 348 S.W.3d 194, 209 (Tex. 2011) (explaining that fraudulent concealment does not apply when when knows of underlying injury-causing conduct). Ultimately, none of the tolling doctrines Dedmon tries to use to revive his tardy pay claims are applicable here. For these reasons and those more fully stated in Defendants' Motion, Dedmon's pay claims fail as a matter of law.

**B. Dedmon's opposition glosses over the fact that he received the JG5 job grade and salary increase in 2015 within six months of starting at Shell**

Dedmon's Opposition fails to contend with the fact that within six months at Shell he received the very job grade and salary increase he claimed he should have received at the start of his employment. Even viewing the dispute surrounding Dedmon's initial job grade and salary in his favor, his pay claims are ultimately moot because Shell gave him the higher job grade and salary within months of the start of his employment. Although in his Opposition he broadly refers to a "facially discriminatory pay policy," he never actually identifies any such policy and only offers his opinion that he should be paid more (ignoring that he has almost consistently earned more than Hund, a White colleague who was in the group longer than Dedmon and was a JG5 like Dedmon, and Deley, another White colleague who was a JG5 in the group until 2021). But Dedmon's opinion is not evidence. *See E.E.O.C. v. Louisiana Office of Community Svcs.,* 47 F.3d 1438, 1448 (5th Cir. 1995). Further, other than the events in 2014 (which were made moot by the job grade and salary increase Dedmon received in 2015), Dedmon never identifies a single alleged discriminatory decision that relates to any pay he received within the limitations and potential recovery period. Thus, for these significant reasons and those more fully described in Defendants' Motion, Dedmon's pay claims, including his reliance on the Ledbetter law, fails.

10

**C. There is no direct evidence of discrimination and Dedmon has not created a fact issue on his prima facie case, on Shell's legitimate non-discriminatory reasons or on pretext related to his pay claims**

Dedmon incorrectly argues that there is direct evidence of discrimination based on Rangan's allegation about Olmen's alleged statements regarding people of color and minorities. Even assuming Rangan's account of her conversation with Olmen is accurate, it does not constitute direct evidence of discrimination when the contemporaneous evidence shows that the job grade change was made before Dedmon's identity was discussed with HR and before the alleged discussion between Rangan an Olmen about people of color. In other words, Shell made the decision without regard to Dedmon's race and would have made the same decision absent the alleged comments by Olmen (because the decision came first, underscoring the fact that the job grade and salary decision was made for business reasons unrelated to anything Olmen allegedly said to Rangan later in the process). *See Wilkinson v. Pinnacle Lodging, L.L.C.*, 2023 WL 6518142, at *3 (5th Cir. Oct. 5, 2023) (holding "where the plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor."). Thus, there is no direct evidence of discrimination and the *McDonnell Douglas* burden-shifting formula applies here.

11

Under the *McDonnell Douglas* framework, the contemporaneous communications and other records at the time establish the following critical facts, which Dedmon's Opposition does not sufficiently refute to create a fact issue:

- Jennifer Hartnett initially reached out to HR expressing in interest in extending an offer to an unidentified candidate after their initial offer to another candidate fell through[3] – Harnett's email makes no mention of Dedmon specifically or his race;

- HR promptly responded and explained that intervening changes (departures of other employees) prevented them from bringing in another JG5 role and required them to adjust the job grade to a JG6[4] – again, no specific discussion of Dedmon during these exchanges;

- When Rangan got involved, she expressed frustration about the allocation of job grades in the group generally and added concern about offering the position at a lower job grade to a "POC" – introducing Dedmon's race for the first time *after* the job grade decision had been made and in an effort to change the decision (not because his race was a factor in the decision);

- Rangan and HR communicated about the allocation of job grades within the group, unrelated to Dedmon, with Rangan revealing that there have been concerns about the job grade classifications within the group long before Dedmon's candidacy and completely unrelated to his race;

---

[3] Rangan's declaration (if accepted) confirms that she was part of the process for selecting that candidate and debunks any notion that that decision was discriminatory.

[4] Dedmon suggests that Shell's statement of the reasons for the job grade change is not clear or specific and is hearsay. This completely ignores the contemporaneous records where the reason for the decision is explained in communications between HR and the business group. *See* Dkt. 33, pp. 3-5. Moreover, Defendants' burden is one of production, not persuasion and Dedmon's argument that Defendants failed to establish this was "the real" reason is wrong, particularly with the record evidence includes undisputed communications about the basis for the change before Rangan injected Dedmon's race into the discussion in effort to change the business decision that had already been made. *Black v. PanAmerican Labs., L.L.C.,* 646 F.3d 254, 259 (5th Cir. 2011). Finally, if Olmen's explanation of the business reason for the job change is hearsay, then Rangan's entire account of her conversation with Olmen is likewise hearsay and should be disregarded.

12

- In a conversation after this job grade decision had been made, Rangan and Olmen had a private discussion where Rangan claims Olmen refers to "minorities" not doing well at Shell;

- Shell posted the JG6 position, Dedmon applied and received an offer, and then received a job grade and salary increase six months later; in his declaration, Dedmon admits that Shell notified him of the internal review and changes (see, e.g., Dedmon Appx 7, 10);

- From February 2015 through the date of his resignation in 2024, Dedmon consistently received salary increases and earned more than his White peers who were also JG5 (including Hund whom he conveniently ignores in his Opposition);

- Between February 2015 and his resignation in 2024, Dedmon only applied for one other job at a higher job grade level, which was in another group and about which he has no complaints. He failed to apply for the 2021 JG4 position in his own group, has no evidence of any openings for any other higher job grades for which he ever applied or was not selected, and has no evidence that that he should be earning as much or more as individuals with higher job grades, including his own supervisor.

For all of these reasons, and those described fully in Defendants' Motion, there is no genuine issue of material fact on Dedmon's prima facie case, Shell's reasons for its decisions, or pretext. Accordingly, summary judgment is proper on Dedmon's pay discrimination claims.

### D. **Dedmon tries to move the goalpost on his failure to promote claim and barely offers any support to maintain that claim**

Dedmon does not create a fact issue on his failure to promote claim. In fact, he never denies in his Opposition that he could have applied for the 2021 JG4 position that opened in his group, and he offers no reason excusing him from doing

13

so. Instead, he tries to divert the court's attention by now suggesting that Deley's selection for the 2021 JG4 position was a sham because the duties of the position were allocated among different team members. Even assuming that this completely conclusory assertion is true, it still does not explain why Dedmon did not pursue the increase in job grade and salary. Dedmon has already admitted that no one prevented him from pursuing the position. *See* Dkt. 33, Ex. B, 102:4-9, 11-18; 107:7. Unlike the case in *Paugh,* which Dedmon tries to rely on, the JG4 position was real because it would have resulted in a job grade and salary increase for Dedmon had he applied and been selected. Thus, regardless of how Dedmon claims the duties of the position were allegedly allocated after the fact, the change in job grade and salary increase were real and far from illusory – indeed, what would Dedmon even have to complain about if the change in job grade and salary were merely illusory? Thus, whatever Dedmon's grievances are about how the position was handled after the selection process might be (and assuming they are even accurate), Dedmon still does not overcome the most fatal defect: no application equals no job grade or corresponding salary increase. Accordingly, Dedmon's failure to promote claim fails as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons and those raised in its Motion for Summary Judgment, Defendants respectfully request that the Court disregard and strike

14

Dedmon's evidence as set forth herein, grant their Motion for Summary Judgment, and dismiss Dedmon's claims in their entirety with prejudice.

Respectfully submitted,

*/s/ Marlene C. Williams*
Marlene C. Williams (Attorney-in-Charge)
State Bar. No. 2400187
Federal Bar No. 22824
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
500 Dallas Street, Suite 3000
Houston, Texas 77002
(713) 655-0855
(713) 655-0020 (Fax)
marlene.williams@ogletree.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF COMPLIANCE

I certify that this document conforms to the Court's requirements and this Court's Local Rules regarding word limits, subject to the Motion for Leave which the Court has granted. The length of this Motion, excluding the case caption, signature block and certificates is 3462 words.

*/s/ Marlene C. Williams*
Marlene C. Williams

15

## CERTIFICATE OF SERVICE

      I hereby certify that on December 13, 2024, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas – Houston Division, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to counsel of record.

                                                                 */s/ Marlene C. Williams*
                                                                 Marlene C. Williams