# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Robert Dedmon, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:21-cv-03371 |
| | § | |
| | § | JUDGE CHARLES ESKRIDGE |
| vs. | § | |
| | § | Jury Demand |
| Shell Exploration & | § | |
| Production Company and | § | |
| Shell Trading Services | § | |
| Company, | § | |
| Defendants. | § | |

## JOINT PRETRIAL ORDER

1. **Appearance of counsel**

| | |
|---|---|
| **Plaintiff Robert Dedmon** | Ms. Amy E. Gibson<br>amy@gwfirm.com<br>Mr. David L. Wiley<br>david@gwfirm.com<br>1500 Jackson Street #109<br>Dallas, Texas 75201<br>(214) 522-2121 |
| | Ms. Amanda C. Hernandez<br>amanda@ahfirm.com<br>5718 Westheimer, Suite 1000<br>Houston, Texas 77057<br>(713) 588-4359 |
| **Defendants Shell Exploration & Production Company** *and* **Shell Trading Services Company** | Ms. Marlene C. Williams<br>marlene.williams@ogletree.com<br>500 Dallas Street #2100<br>Houston, Texas 77002<br>(713) 655-0855 |

2. **Statement of the case**

**No agreed statement of the case**

**Robert Dedmon statement of the case**
This is an unlawful employment practices case. It involves claims for race and color discrimination. The allegations include (1) a national unlawful pay practice dating back to at least 2014 and (2) ongoing discrimination concerning compensation and job grades. Shell disputes the allegations.

**Shell Defendants statement of the case**
This is a single-plaintiff race discrimination case brought under Title VII and Section 1981. Plaintiff alleges that Shell paid him less that certain of his White peers because of his race and denied him a promotion in 2021 because of his race. Shell denies Plaintiff's allegations in their entirety.

**Robert Dedmon contentions**
Defendants have multiple and long-standing system failures that resulted in pay discrimination based on race. Defendants have known about race discrimination problems within their ranks for decades before Mr. Dedmon ever started work. The systemic problems resulting in race-based pay

discrimination have not been improved or resolved to date.

In 2020, shortly after George Floyd was murdered, Shell hiring manager Sri Rangan reveals to Mr. Dedmon that Shell downgraded his 2014 job grade and pay scale because Mr. Dedmon is black. Shell had given Mr. Dedmon a false reason for the downgrade, on which Dedmon relied.

It is undisputed that pay and job grade disparities continued for Mr. Dedmon versus white peers every year through his resignation in October 2024. It is undisputed that a 2021 "application" process for a 2021 job grade 4 spot involves a white team member who gets a better job grade but does not actually take over the role for which he applies.

The pay disparities total more than $790,000 based on the limited data that Shell has provided. Shell has not provided all pay data needed to calculate actual losses. But the worst harm is the betrayal of trust that Mr. Dedmon placed in Shell and the consequences of that betrayal.

**Shell Defendants contentions**
Plaintiff is a former employee of Shell Trading. Shell categorically denies that it participated in any discrimination against Dedmon, including with respect to his initial hiring, his job grade and compensation, and any promotion decisions.

Dedmon initially applied for an open JG5 position on the Power Sales team at Shell in or around February 2014 but was not selected for the role. After negotiations with the selected candidate were not successful and additional changes in the department occurred affecting the overall balance of positions within the group, Shell decided to repost the position as a JG6. The decision to repost the job as a JG6 had nothing at all to do with Dedmon. In fact, the HR department were not even aware that the business group wanted to offer the open position to Dedmon when the job grade change was made.

The business group and HR had lengthy discussions regarding the job grade change, including HR's business reasons for the change and the business group's concerns about how job grades were distributed within the group – completely unrelated to Dedmon. One member of the business group, Sri Rangan (now former employee), additional expressed concerns about offering the position at a lower job grade to a person of color. Although the business group tried to have HR reconsider the job grade for the open position, HR explained that they were unable to do so for business reasons.

Dedmon was eventually offered the JG6 position. He was aware of the change in job grade at the time and inquired about it but proceeded to accept the position as it was offered to him, even though he believed or suspected that it had

been previously offered to a white woman at a higher job grade and salary. Shell did not do anything to islead Dedmon about the basis for the job change or to impede him in pursing any claims he believes he had regarding the job grade change.

Approximately six (6) months after the start of his employment, Dedmon was promoted to a JG5 and received a salary increase. Dedmon continued to receive salary increases throughout his employment and has had a higher salary and overall compensation that some of his White colleagues who are also classified as JG5s.

In or around the Summer of 2020, Sri Rangan told Dedmon that Olmen made comments that "POCs tend to struggle" and not do well at Shell. Rangan also wrongly lead Dedmon to believe that Shell changed the job grade and compensation for the 2014 open position because of Dedmon's race/color. Dedmon did not raise the issue internally but instead filed a charge of discrimination broadly claiming that he had been discriminated against throughout his entire employment. Dedmon later filed suit and amended his complaint to allege an additional claim for failure to promote related to a JG4 open position in his department for which he did not apply.

Shell contends that this is a single-plaintiff race discrimination case and not a pattern and practice case or a case about alleged national pay practices. Shell further contends that the evidence will show that the job grade change in 2014 was based purely on business reasons, as explained at the time to Rangan and others in the business group. Shell also contends that Dedmon has sufficient information in 2014 to bring a discrimination claim at the time, but failed to do so. Moreover, Shell contends that Dedmon received a job grade promotion and salary increase six months after the start of his employment in or around February 2015, which completely moots his claims based on the 2014 decision. In addition, Shell contends that Dedmon has not and cannot point to any evidence that ties the events in 2014 to any compensation payments he received during the relevant time period for which he can recover in this case. Shell also contends that Dedmon has consistently received salary increases based on his performance and that he has earned more than some of his White colleagues throughout the relevant time period. Shell further contends that Dedmon was aware of the JG4 job opening in 2021 and could have applied for it at the time. Moreover, Shell contends and Dedmon admits that no one prevented or discouraged him from applying for the position and there is no evidence that it would have been futile for Dedmon to submit an application for the position. In addition, Shell contends that Dedmon was not selected for the JG4 position because he failed to apply for it.

Finally, Shell contends that Dedmon has not provided any evidence of his alleged damages in this case and has not disclosed a calculation of damages. Ultimately, Dedmon is not entitled to any recovery from Shell on any of his claims.

**Issues requiring resolution at trial**

**Robert Dedmon**
At trial, the jury must decide whether the Shell Defendants discriminated against Mr. Dedmon because of his race. This may include (1) whether the 2014 change in job grade and pay for Mr. Dedmon occurred because of race; (2) whether job grade and pay disparities continued because of race; (3) whether the 2021 application process for an empty team position excluded Mr. Dedmon from employment opportunities because of race; and (4) whether panic attacks independently interfered with the benefits, privileges, terms, or conditions of Mr. Dedmon's employment.

If the jury decides there was discrimination because of race, the jury must decide damages intended to compensate Mr. Dedmon. This includes (1) pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to name and reputation, and other noneconomic losses, and (2) compensation losses.

If the jury decides there was discrimination because of race, the jury must also decide damages intended to punish.

**Defendants**
At trial, the jury must decide whether Defendants discriminated against Plaintiff because of his race, including with respect his job grade and compensation and the 2021 open position in his group to which he did not apply. If the jury finds that Defendants are liable to Plaintiff for race discrimination, the jury must decide whether to award damages and the amount of any damages.

### 3. Jurisdiction

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 [federal question jurisdiction].

Each defendant filed an answer and admits that the Court has jurisdiction over it in this matter.

There are no unresolved jurisdictional questions.

### 4. Motions

Defendants' motion for summary judgment [Doc. No. 33]

**Robert Dedmon:**
Robert Dedmon anticipates seeking leave to file a sur-reply.

Robert Dedmon submitted a request to the Court on September 24, 2024 about lack of promised [agreed] discovery from defense and explaining that both parties agreed the discovery was material [citing a joint filing].

### 5. The parties' contentions

**Robert Dedmon**
The Shell Defendants both violated two federal laws prohibiting race and color discrimination: Section 1981 and Title VII. Defendants are estopped from asserting limitations on some of those violations and others are otherwise within limitations. The violations caused Robert Dedmon both economic and non-pecuniary damage. The Shell Defendants' acted with malice or reckless indifference to his federally protected rights to be free from discrimination—and so, punitive damages are appropriate.

**Shell Defendants**
Defendants contend that they did not violate Title VII and Section 1981. Defendants also contend that Plaintiff's claims are time barred because he failed to timely pursue them within the applicable statute of limitations, and not equitable or other theories excuse Plaintiff's late claims. Defendants further contend that Plaintiff did not suffer and is not entitled to any damages in this case, economic or non-pecuniary. Defendants did not act with malice or reckless indifference to any of Plaintiff's rights and there is no basis for punitive damages in this case.

### 6. Admissions of fact

1. Shell Trading Services Company had more than 500 employees in each of 20 or more calendar weeks in each calendar year since 2013.

2. Shell Exploration & Production Company had more than 500 employees in each of 20 or more calendar weeks in each calendar year since 2013.

3. The Shell Defendants are both in the oil and gas business. They each operate from Houston, Texas.

4. The Shell Defendants use job grades with salary ranges for their respective employees in the United States. Within their respective systems, a lower job

grade number generally indicates a higher job grade position.

5. A job opening for a Houston, Texas sales job was posted in or around 2014.

## 7. Contested issues of fact

**Robert Dedmon**
1. Whether the Shell Defendants discriminated against Mr. Dedmon because of race. This includes the 2014 downgrade in job grade and pay, the continued pay disparity compared to white peers in every year of employment, the application process to fill a vacant team spot in 2021, and panic attacks requiring medical leave as due to discrimination and independently affecting terms, conditions, or privileges of employment.

2. Whether false statements, whether innocent or intentional, were made to Mr. Dedmon about the reason for the change from JG5 to JG6 in 2014;

3. The existence and amount of compensatory damages.

4. The existence and amount of compensation losses.

5. The existence and amount of punitive damages.

**Shell Defendants**
1. Whether Dedmon's job grade/compensation in 2014 was changed because of his race/color.

2. Whether Dedmon received a job grade promotion and compensation increase in 2015.

3. Whether Shell used Dedmon's race/color at any time during the relevant time period to set his job grade/compensation.

4. Whether Dedmon knew about the JG4 open position in his department in 2021.

5. Whether Dedmon was prevented or discouraged from applying for the JG4 open position in his department in 2021.

6. Whether it would have been futile for Dedmon to apply for the JG4 open position in his department in 2021.

7. Whether Teri Olmen made the comments alleged by Sri Rangan that "POCs at Shell tend to struggle" or not do well.

8. Whether Shell investigated a complaint from Sri Rangan in 2014 regarding alleged comments by Teri Olmen that "POCs at shell tend to struggle" or not do well.

9. Whether Dedmon was underpaid in comparison to any proper White comparators.

10. Whether Shell used Dedmon's race/color with respect to the JG4 open position in his department in 2021.

### 8.  Agreed applicable propositions of law

1. The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits discrimination because of race or skin color in the making and enforcing of contracts—which includes at-will employment.

2. Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against employees because of race or skin color—which includes at-will employment.

3. "[A]n unlawful employment practice occurs ... when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 42 U.S.C. § 2000e–5(e)(3)(A).

4. Both Title VII and Section 1981 permit recovery for damages caused by race and color discrimination, including punitive damages.

### 9.  Contested issues of law.

**Robert Dedmon**
Robert Dedmon's attorneys believe most of the Shell Defendants' contested issues of law are fact issues and that most contested issues in this case are fact issues for the jury to decide. And even then, most contested issues of law depend on jury fact findings.

1. Whether, after jury findings on estoppel, whether or not estoppel applies to the 2014 job grade and pay decision.

2. Whether Mr. Dedmon's pleaded claim about the JG4 application process is a traditional failure to promote claim or instead a different kind of claim that

includes the application process itself under the United State Supreme Court opinion in *Muldrow v. City of St. Louis*.

3. Whether Mr. Dedmon's panic attacks requiring medical leave independently affected the terms, conditions, or privileges of employment under *Muldrow v. City of St. Louis*.

**Shell Defendants**

1. Whether Dedmon asserts a failure to promote claim under Title VII and whether it has been administratively exhausted.

2. Whether Dedmon's failure to promote claim is time barred under Title VII.

3. Whether Dedmon's pay discrimination claims under Title VII and/or Section 1981 are time barred.

4. Whether any equitable or other doctrines apply to excuse the untimeliness of Dedmon's claims, including the continuing violations doctrine, the discovery rule, estoppel, fraudulent concealment, and/or the Ledbetter law.

5. Whether Dedmon can prove that Shell discriminated against him on the basis of his race/color in violation of Title VII and/or Section 1981 based on his race/color with respect to the job grade/compensation decision made in 2014.

6. Whether the job grade/compensation decision Shell made in 2014 regarding Dedmon is tied to any compensation Dedmon received during any period for which he could recover in this case.

7. Whether Shell discriminated against Dedmon on the basis of his race/color in violation of Title VII and/or Section 1981 when it set his compensation and job grade.

8. Whether Shell discriminated against Dedmon on the basis of his race/color in violation of Title VII and/or Section 1981 when he was not selected for an open position in his department to which he did not apply in 2021.

9. Whether Dedmon is entitled to damages under Title VII and/or Section 1981 and/or any equitable theories of recovery.

10. Shell incorporates by reference their other affirmative defenses in their Answer on file.

**10. Exhibits**

The parties' separate exhibit lists are attached.

**11.   Witnesses**

The parties' separate witness lists are attached.

*"If any other witnesses will be called at the trial, their names, addresses, and the subject matter of their testimony will be reported to opposing counsel as soon as they are known. This restriction will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before trial."*

**Robert Dedmon:**
Mr. Dedmon's attorneys intend in good faith to call in their case in chief the witnesses that are included in the attached witness list. The topics cover the subject matter of testimony.

**Defendants:**
Defendants' attorneys intend in good faith to call in their case in chief the witnesses that are included in the attached witness list. The topics cover the subject matter of testimony.

**12.   Settlement**

The parties mediated this case on December 31, 2024, before private mediator Gloria Portela in Houston, Texas. The mediation did not result in settlement. But the parties have thereafter continued settlement negotiations through the mediator. The parties' efforts were slightly delayed because defendants have multiple decisionmakers and one of them was unavailable in a previously scheduled out-of-state trial during a portion of the post-mediation negotiations.

**13.   Trial**

This is a jury trial.

Robert Dedmon's attorneys currently estimate 10 calendar days as the probable length of trial including jury selection and jury deliberation through verdict.

The Shell Defendants believe a more reasonable estimate for trial is 5 calendar days, exclusive of jury selection and jury deliberations.

Robert Dedmon's attorneys foresee no logistical problems other than the compelling of certain witnesses to trial — depending on the trial date. Known witness conflicts are listed below. Robert Dedmon's attorneys will provide more detailed information if the Court desires.

| **Keyani Adigun** damages — before and after witness | Conflicts <br>• April 13-19 |
|---|---|
| **Brushaud Callis** damages — before and after witness | Conflicts—out of town: <br>• March 1-7 <br>• July 2025 |
| **Robert Dedmon** plaintiff — but will cancel his participation in family vacation if needed for trial | Conflicts—out of town: <br>March 8-12 |
| **James Ledbetter** liability damages — before and after witness damages — punitive damages predicate | Conflicts—out of town: <br>• Feb. 24-March 12 <br>• March 24-April 5 <br>• April 24-May 5 |
| **Luis Lugo** liability including pay disparity — critical witness on discrimination | Conflicts—out of town: <br>• March 6-15 |
| **Sean Matthews** liability including pay disparity — critical witness on discrimination | Conflicts—out of town: <br>• March 17-21 |

| **Srikala (Sri) Rangan**<br><br>liability including direct evidence of discrimination based on personal knowledge — critical witness on discrimination | Conflicts—Out of town/country:<br><br>• February 2025<br>• March 9-18<br>• June 5-11 |
|---|---|

The parties' attorneys anticipate no unusual exhibits but may use physical [*i.e.,* not paper] demonstratives to help the jury understand concepts.

## 14.  Juror comprehension initiatives

### *Trial time limits*
The parties' attorneys agree to time limits for jury selection, opening, and closing. They request the following time:

(a) [change to Court Procedure 26(d)] 2 hours for attorney-led questioning for each side during jury selection, with the understanding that the Court may and should end questioning if at any point the Court believes we are wasting time or using jury selection in an improper manner

(b) 30 minutes for opening

(c) 1 hour for closing including the time set aside for rebuttal

The parties' attorneys believe the attorneys in this case are sufficiently experienced that time limits for direct and cross are not needed. The attorneys can feel when the jury has had enough or wants to move on.

### *Preliminary substantive jury instructions*
The parties' attorneys agree to preliminary substantive jury instructions on the basic issues in the case but in more simplified language than the final jury charge, so jurors do not get sidetracked early in the case. Attorneys can then couple or tie the preliminary charge with the language of the final jury charge.

### *Notetaking by jurors*
Robert Dedmon's attorneys agree that (1) jurors should be permitted to take notes if they wish to do so and (2) jurors should be permitted to take those notes with them to the jury room when deliberating.

Defendants do not agree to allowing jurors to take notes with them into the jury room when deliberating.

### *Trial binders for jurors to include glossary of terms, cast of characters, chronology, and key exhibits*
Robert Dedmon's attorneys agree that the parties should provide trial binders with a glossary of terms, cast of characters — agreed photos and connection to the case, and key pre-admitted exhibits. They would also prefer a timeline if one is agreed.

Defendants' attorneys agree to trial binders that include pre-admitted exhibits and a list of witnesses, but do not agree to including terms, a cast of characters with connections to the case, or photos.

The parties' attorneys agree that the jurors may be provided before deliberation with an agreed index of exhibits, with exhibit numbers and a description of each exhibit.

### *Questions by jurors during trial*
The parties' attorneys agree to permit jurors to ask questions and agree to the procedures outlined in the *Jury Innovation Project*, *Pilot Program Manual*, Part A.

They agree that the following is for the Court to decide, but they prefer:

(a) that the Court instruct jurors not to put their names on juror question forms;

(b) that each juror to have juror question forms in the jury box and that every juror pass down his or her juror question form to the bailiff at the end of the witness examination — even if the juror did not write a question on the form;

(c) that the Court remove the witness from the courtroom before allowing the parties to object to the question;

(d) that the Court allow the parties to ask the juror questions, as witnesses may be fearful, intimated, or uncomfortable with having a federal judge ask the questions.

### *Interim statements or argument to jury by counsel.*
Robert Dedmon's attorneys propose an alternative, which is to allow the attorneys to label the subject matter of witness testimony in a non-argumentative manner. Here are three examples. 1. Now, I am going to ask you about damages, and specifically *x*. 2. Let's shift gears to talk about the trust you placed in Shell. 3. We're going back now to 2014 and the hiring process.

Robert Dedmon's attorneys do not believe interim statements or arguments are necessary in a trial of this length if the attorneys can label subjects of testimony as requested above.

Defendants' attorneys do not agree to interim statements or argument to the jury by counsel, including the proposed examples described above, some of which run the risk of leading witnesses, which may be objectionable. Defendants' attorneys believe that counsel can identify topic shifts during examinations, which is common and requires no modifications to the rules governing trial.

**15-1.    Motions in limine**

The parties' separate motions in limine are attached.

**15-2.    Proposed voir dire questions for the Court**

The parties' separate proposed jury selection topics and questions for the Court are attached.

**15-3.    Proposed jury charge**

The parties' separate proposed jury charges are attached.

**15-3.    Memorandum of law**

Mr. Dedmon's memorandum of law is attached. The Shell Defendants defer filing a memorandum of law pending the Court's ruling on Defendants' Motion for Summary Judgment.

SO ORDERED.

Signed on _____, at Houston, Texas.

_____

Hon. Charles Eskridge
United States District Judge

Approved February 10, 2025:

*/s/ Amy Gibson*
_____
Ms. Amy E. Gibson
Attorney-in-Charge
Texas State Bar No. 00793801
Southern District Bar No. 20147
amy@gwfirm.com

Mr. David L. Wiley
Of Counsel
Texas State Bar No. 24029901
Southern District Bar No. 34134
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126

    *and*

Ms. Amanda C. Hernandez
Of Counsel
Texas State Bar No. 24064411
Southern District Bar No. 1531045
amanda@ahfirm.com

AH Law, PLLC
5718 Westheimer, Suite 1000
Houston, Texas 77057
T: (713) 588-4359
F: (281) 572-5370

*Attorneys for Robert Dedmon*

*/s/ Marlene Williams by AGibson at the direction of Marlene*
_____
Ms. Marlene C. Williams
Attorney-in-Charge
Texas State Bar No. 24001872500
Federal ID No.: 22824
marlene.williams@ogletree.com

Ogletree, Deakins, Nash, Smoak
& Stewart, P.C.
500 Dallas Street #3000
Houston, Texas 77002
T: 713-655-0855
F: 713-655-0020

*Attorneys for Defendants*