UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Robert Dedmon, | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 4:21-cv-03371 |
| | § | |
| vs. | § | Jury Demand |
| | § | |
| Shell Exploration & Production | § | |
| Company and Shell Trading | § | |
| Services Company, | § | |
| | § | |
| *Defendants*. | § | |

**PLAINTIFF ROBERT DEDMON'S PROPOSED JURY CHARGE**

**<u>INSTRUCTION NO. 1:</u>   PRELIMINARY INSTRUCTIONS**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day. During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate. It is unfair to discuss the case before all of the evidence is in, because you may become an advocate for one side or the other. The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you. And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case. You must rely solely on what you see and hear in this courtroom. Do not try to learn anything about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue touching on this case. Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the

testimony. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss. These issues are not part of what you must decide and they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. When I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues. I will try to keep these interruptions as few and as brief as possible.

The trial will now begin. Lawyers for each side will make an opening statement. Opening statements are intended to assist you in understanding the significance of the evidence that will be presented. The opening statements are not evidence. After the opening statements, the plaintiff will present his case through witness testimony and documentary or other evidence. Next, the defendants will have an opportunity to present their case. The plaintiff may then present rebuttal evidence. After all the evidence is introduced, I will instruct you on the law that applies to this case. The lawyers will then make closing arguments. Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown. Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

It is now time for the opening statements.

Source:     UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 1.2, PRELIMINARY INSTRUCTIONS

**<u>INSTRUCTION NO. 2:</u>   GENERAL INSTRUCTIONS FOR JURY CHARGE**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.1, JURY CHARGE

**INSTRUCTION NO. 3:  BIAS—CORPORATE PARTY INVOLVED**

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 2.16, BIAS—CORPORATE PARTY INVOLVED

**INSTRUCTION NO. 4:  NO INFERENCE FROM FILING SUIT**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.6, NO INFERENCE FROM FILING SUIT

**INSTRUCTION NO. 5:  BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE**

Robert Dedmon has the burden of proving his case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that Robert Dedmon has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.2, BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE

**INSTRUCTION NO. 6:  EVIDENCE**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another

fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.3, EVIDENCE

## INSTRUCTION NO. 7:  CIRCUMSTANTIAL EVIDENCE

Robert Dedmon is not required to produce direct evidence of unlawful motive. There will seldom be eye-witness testimony to the employer's mental processes. Discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts.

Source:    *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983); *Williams v. Valentec Kisco, Inc.*, 964 F.2d 723, 731 (8th Cir. 1992) (affirming instruction plaintiff was not required to produce direct evidence of unlawful motive, and that intentional discrimination is seldom admitted but may be inferred from the existence of other facts); *Matthews v. Commonwealth Edison Co.*, 93-cv-004140, 1995 WL 478820, at *3 (N.D. Ill. Mar. 24, 1995) (plaintiff is entitled to have an instruction which read "In addition, James E. Matthews is not required to produce direct evidence of unlawful motive. Intentional discrimination, if it exists, is seldom admitted, but is a fact which you may infer from the existence of other facts.").

## INSTRUCTION NO. 8:  WITNESSES

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

~~Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.~~

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The

test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.4, WITNESSES (modified because the instruction crossed-out is legally incorrect and confusing: for example, party testimony may be accepted whether or not contradicted by another eyewitness or by an inference because a reasonable juror can weigh contradiction and can reject inferences).

**INSTRUCTION NO. 9:  IMPEACHMENT BY WITNESS'S INCONSISTENT STATEMENTS**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 2.11, IMPEACHMENT BY WITNESS'S INCONSISTENT STATEMENTS

**INSTRUCTION NO. 10:    PARALLEL THEORIES ON DAMAGES**

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Source:    TEX. PATTERN JURY CHARGE 100.12 (2022).

**INSTRUCTION NO. 11:    SECTION 1981**

Robert Dedmon's has a claim for recovery based upon a federal statute, Title 42,

United States Code, Section 1981. This statute provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens. This law entitles a person of color to equal opportunity and treatment in employment—including at will employment. Thus, when an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages. To recover on his claim against the Defendants, Robert Dedmon must prove the following elements by a preponderance of the evidence:

1. Defendant intentionally discriminated against him; and

2. as a direct result of such discrimination, he sustained damages.

Source:      42 U.S.C. § 1981

## INSTRUCTION NO. 12:      TITLE VII

Robert Dedmon also has a claim for recovery under Title VII of the Civil Rights Act of 1964. He claims Defendants employed him but were motivated by his race and the color of his skin to pay him less than they would have otherwise. It is unlawful for an employer to discriminate against an employee because of the employee's race or the color of his skin. An employer may, however pay an employee less than others for other reasons, good or bad, fair or unfair.

To prove a defendant unlawfully discriminated against him, Robert Dedmon must prove by a preponderance of the evidence that defendant's compensation for work was motivated by his race or the color of his skin. Robert Dedmon does not have to prove that unlawful discrimination was the only reason a defendant paid him what it did.

If you find that the reason a defendant has given for paying Robert Dedmon what it did or denying him pay at a certain amount is unworthy of belief, you may, but are not required to, infer that defendant was motivated by Robert Dedmon's race or the color of his skin.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.1, TITLE VII— DISCRIMINATION BASED ON RACE, COLOR, NATIONAL ORIGIN, RELIGION OR SEX (DISPARATE TREATMENT) (modified to fit case)

**INSTRUCTION NO. 13:        VICE PRINCIPALS**

Shell Exploration & Production Company and Shell Trading Services Company are companies. When a vice principal of a company commits some act, then that act is deemed to be the act of the company itself. A company may have more than one vice-principal. A vice-principal may be an individual or another company. An individual or another company is a "vice principal" if-

1.      that individual or other company has authority to employ,direct, and discharge employees of the company; or

2.      the company has confided to that individual or other company the management of the whole or a department or division of its business.

Source:      *Bennett v. Reynolds*, 315 S.W.3d 867, 883 (Tex. 2010)


**INSTRUCTION NO. 14:        DELEGATION**

An employer who limits decision-making authority to a few individuals who in turn rely on recommendations by other workers who interact with the employee may be held to have effectively delegated the power to take tangible employment action to the worker on whose recommendations it relies.

Source:      *Vance v. Ball State Univ.*, 570 U.S. 421, 446-47 (2013)


**INSTRUCTION NO. 15:        DAMAGES**

If you find that either defendant discriminated against Robert Dedmon because of his race or the color of his skin, then you must determine whether such discrimination caused him damages and, if so, you must determine the amount of those damages. You should not conclude from the fact that I am instructing you on damages that I have any opinion as to whether he has proved liability.

Robert Dedmon must prove his damages by a preponderance of the evidence. Your award must be based on evidence and not on speculation or guesswork. On the other hand, Robert Dedmon need not prove the amount of his losses with mathematical precision, but only with as much definitiveness and accuracy as the circumstances permit.

You should consider the following elements of actual damages, and no others: (1)

the amount of back pay and benefits Robert Dedmon would have earned in his employment if he had not been discriminated against because of his race or the color of his skin minus the amount of earnings and benefits that Robert Dedmon received from employment during that time; and (2) the amount of other damages sustained by Robert Dedmon supported by the evidence, such as pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, *harm to name and reputation*, and other noneconomic losses.

Back pay includes the amounts the evidence shows Robert Dedmon would have earned had he not been discriminated against in his pay because of his race or the color of his skin. These amounts include wages or salary and such benefits as life and health insurance, stock options, and contributions to retirement. You must subtract the amounts of earnings and benefits either defendant proves by a preponderance of the evidence Robert Dedmon received during the period in question.

There is no exact standard for determining actual damages. You are to determine an amount that will fairly compensate Robert Dedmon for the harm he has sustained. Do not include as actual damages interest on wages or benefits. In addition to actual damages, you may consider whether to award punitive damages. Punitive damages are damages designed to punish a defendant and to deter similar conduct in the future.

You may award punitive damages if Robert Dedmon proves by a preponderance of the evidence that: (1) the individual who engaged in the discriminatory act or practice was acting in a managerial capacity for a defendant; (2) he or she engaged in the discriminatory act or practice while acting in the scope of his or her employment with that defendant; and (3) he or she acted with malice or reckless indifference to Robert Dedmon's federally protected right to be free from discrimination.

If Robert Dedmon has proved these facts, then you may award punitive damages against a defendant, unless that defendant proves by a preponderance of the evidence that the conduct or act was contrary to its good-faith efforts to prevent discrimination in the workplace.

In determining whether someone was a supervisor or manager for a defendant, you should consider the type of authority the employee had over Robert Dedmon and the type of authority for employment decisions that defendant authorized the employee to make.

An action is in "reckless indifference" to Robert Dedmon's federally protected rights if it was taken in the face of a perceived risk that the conduct would violate federal law. Robert Dedmon is not required to show egregious or outrageous discrimination to recover punitive damages. Proof that a defendant engaged in intentional discrimination, however, is not enough in itself to justify an award of punitive damages.

In determining whether a defendant made good-faith efforts to prevent discrimination in the workplace, you may consider whether it adopted antidiscrimination policies, whether it educated its employees on the federal antidiscrimination laws, how it responded to Robert Dedmon's complaint of discrimination, and how it responded to other complaints of discrimination.

If you find that a defendant acted with malice or reckless indifference to Robert Dedmon's rights and did not make a good-faith effort to comply with the law, then in addition to any other damages you find Robert Dedmon is entitled to receive, you may, but are not required to, award Robert Dedmon an additional amount as punitive damages for the purposes of punishing a defendant for engaging in such wrongful conduct and deterring that defendant and others from engaging in such conduct in the future. You should presume that Robert Dedmon has been made whole for his injuries by any actual damages you have awarded.

If you decide to award punitive damages against a defendant, you should consider the following in deciding the amount:

1.    How reprehensible that defendant's conduct was. You may consider whether the harm Robert Dedmon suffered was physical or economic or both; whether there was violence, intentional malice, or reckless disregard for human health or safety; whether that defendant's conduct that harmed Robert Dedmon also posed a risk of harm to others; whether there was any repetition of the wrongful conduct or there was past conduct of the same sort that harmed Robert Dedmon.

2.    How much harm that defendant's wrongful conduct caused Robert Dedmon and could cause him in the future.

3.    What amount of punitive damages, in addition to the other damages already awarded, is needed, considering that defendant's financial condition, to punish that defendant for its conduct toward Robert Dedmon and to deter that defendant and others from similar wrongful conduct in the future.

4.    The amount of fines and civil penalties applicable to similar conduct.

The amount of any punitive damages award against any defendant should bear a reasonable relationship to the harm that defendant caused Robert Dedmon.

You may assess punitive damages against any, or all, of the defendants, or you may refuse to impose punitive damages. If punitive damages are imposed on more than one

defendant, the amounts for each may be the same or they may be different.

Source:      UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.14, Title VII and ADA Damages (italics added)

## QUESTION NO. 1

Did any of the defendants named below, either itself or through a vice-principal, intentionally discriminate against Robert Dedmon in his pay or other terms or conditions of his employment because of his race or the color of his skin?

Answer "Yes" or "No" for each:

Shell Exploration & Production Company        _____

Shell Trading Services Company        _____

Source:      42 U.S.C. § 1981; UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.1, Title VII—Discrimination

If you answered "Yes" to either part of Question 1, then answer the following question. Otherwise, do not answer any other questions.

## QUESTION NO. 2

Did any of the defendants named below, either itself or through a vice-principal, represent to Robert Dedmon in 2014 (innocently or not) that it had some other reason for paying him what it did—or conceal from him that his race or the color of his skin was being used to set his starting job grade—and, if so, did that reasonably induce him to refrain from pursuing his legal rights until after he learned his job grade was downgraded or pay was lower because of his race or the color of his skin?

Answer "Yes" or "No" for each:

Shell Exploration & Production Company        _____

Shell Trading Services Company        _____

Source:       *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 391 (5th Cir. 2002); *Rhodes v. Guiberson Oil Tools Div.*, 927 F.2d 876, 880 (5th Cir. 1991); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 595 (5th Cir. 1981) (en banc); *Tucker v. United Parcel Service*, 657 F.2d 724, 725 (5th Cir. 1981); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 925-26 (5th Cir. 1975)

## QUESTION NO. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Robert Dedmon for the damages, if any, caused by the discrimination you found?

Answer in dollars and cents for the following items and none other:

1.    Past pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, *harm to name and reputation and other noneconomic losses.*

$_____

2.    Future pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, *harm to name and reputation and other noneconomic losses.*

$_____

3.    Wages and benefits from Robert Dedmon's date of hire until Michael Deley is advanced to a JG4 job grade:

$_____

4.     Wages and benefits from the day after Michael Deley is advanced to a JG4 job grade until the date of your verdict:

$_____

Source:       UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.14, Title VII and ADA Damages

## QUESTION NO. 4

Do you find that Robert Dedmon should be awarded punitive damages?

Answer "Yes" or "No" for each:

Shell Exploration & Production Company     _____

Shell Trading Services Company     _____

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.14, Title VII and ADA Damages

If you answered "Yes" to either part of Question 4, then answer Question No. 5. Otherwise, do not answer any part of Question No. 5:

## QUESTION NO. 5

What sum of money should be assessed against each defendant named below, if any, as punitive damages?

Answer in dollars and cents, if any, for each:

Shell Exploration & Production Company     $_____

Shell Trading Services Company     $_____

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 11.14, Title VII and ADA Damages

## INSTRUCTION NO. 14:      DUTY TO DELIBERATE; NOTES

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your

independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the court-room.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

Source:    UNITED STATES FIFTH CIRCUIT DISTRICT COURT JUDGES ASSOCIATION, PATTERN JURY INSTRUCTIONS (CIVIL CASES) (2020) § 3.7, DUTY TO DELIB-ERATE; NOTES