# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| Robert Dedmon, | § | CIVIL ACTION NO. |
| Plaintiff, | § | 4:21-cv-03371 |
| | § | |
| | § | JUDGE CHARLES ESKRIDGE |
| vs. | § | |
| | § | Jury Demand |
| Shell Exploration & | § | |
| Production Company and | § | |
| Shell Trading Services | § | |
| Company, | § | |
| Defendants. | § | |

---

## ROBERT DEDMON'S RESPONSE TO DEFENDANTS' MOTION IN LIMINE AND BRIEF IN SUPPORT

---

ARGUMENT AND AUTHORITIES[1]

## All MIL points: denial in whole for lack of specificity

The Fifth Circuit has warned that *blanket evidentiary exclusions can be especially damaging in employment discrimination cases*, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of its own motives.

> — *Govea v. CB&I LLC*, No. 22-CV-01328, 2024 WL 4537150, at *1 (W.D. La. Oct. 21, 2024) (citing cases)

In *Govea*, a race discrimination case, a court rejected the same blanket limine arguments defense makes here [same defense law firm]. "Motions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Id.* at *1. "Evidentiary rulings, however, should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *Id.* Here, Defendants fail to identify any specific piece of evidence — any particularly identified document or any named witnesses' testimony — meriting exclusion. This alone is reason to deny the defense motion in limine in total.

---

[1] Unless otherwise noted, Dedmon's attorneys have (1) supplied all emphases, (2) omitted from quoted passages in legal authority all internal quotation marks, internal citations, and internal footnotes, and (3) omitted from citations to legal authority all citing and quoting references.

## MIL No. 1: policy and evidence of discrimination

[Under *Bazemore* v. *Friday*, 478 U.S. 385 (1986)] when an employer adopts *a facially discriminatory pay structure* that puts some employees on a lower scale because of race, the employer engages in intentional discrimination whenever it issues a check to one of these disfavored employees. An employer that adopts and intentionally retains such a pay structure can surely be regarded as intending to discriminate on the basis of race as long as the structure is used.

— *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*,
550 U.S. 618, 634 (2007)

A facially discriminatory pay policy putting some employees on a lower scale because of race is unlawful. Whether it is a "national" policy or more local. Whether it is called a policy or practice or pattern or by some other descriptive name. So, evidence of it cannot be irrelevant or unduly prejudicial. And without specifying *which* piece of evidence in particular defense challenges, denial of this limine motion is proper.

## MIL No. 2: damages

Defendants seek to exclude economic damages despite its own failure to produce documents that it admits are owed and needed to calculate those damages [see attached]. Some documents also concern pay discrimination for black members of the inside sales team. These documents include:

1 2014 pay records for the inside sales team members other than Robert — Shell only provided 2014 pay for Robert

2 pay records for Raif Rucker while Raif was on the same inside sales team as Robert; Raif appears to be the only other black employee on the inside sales team in the last 10 years

3 pay records for Meredith Lilly while Meredith was on the same inside sales team as Robert; Meredith is believed to be the white female who in 2014 was offered the inside sales position at JG5 and rejected the offer, but later joined the inside sales team and sat next to Robert

4 pay records for Justin Mody and Jim Promubol from 2014 forward for the time Justin and Jim were on the same inside sales team as Robert

5 supplemental pay records for the inside sales team members through October 22, 2024 [last day of work for Robert]

Economic harm from the discriminatory pay policy here began when Mr. Dedmon first started working on August 19, 2014, and continued through his last day of work on October 22, 2024. Defense has promised but not produced material documents central to Mr. Dedmon's economic damage calculations, including pay data addressed above and underlying performance data. Without the complete pay records for every member of the team, Mr. Dedmon cannot provide fully accurate calculations for his lost compensation.

As recently as February 20, 2025, Shell represented that it would still produce missing performance reviews, missing performance review data, and missing pay records. Mr. Dedmon should not be punished for relying on that representation. Shell had a duty to preserve these documents. *See* 29 CFR 1602.14 [Preservation of records made or kept]. "When the duty arises, even

information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted." *Ringers Techs. Llc v. Harmer*, No. 4:18-CV-4347, 2020 U.S. Dist. LEXIS 204861, 2020 WL 6385813, at *2 (S.D. Tex. Aug. 17, 2020), *rep. & rec. adopted*, 2020 U.S. Dist. LEXIS 202569, 2020 WL 6384349 (S.D. Tex. Oct. 30, 2020). Shell's failure to preserve the documents would meet the standard for imposing Rule 37(e) sanctions. *See* Fed. R. Civ. P. 37(e); *Villalon v. Cameron Cty.,* Civil Action No. 1:15-cv-00161, 2017 U.S. Dist. LEXIS 222483, at *7 (S.D. Tex. June 22, 2017).

## MIL No. 3: lay opinions

> Courts often have permitted lay witnesses to express opinions about the motivation or intent of a particular person if the witness has an adequate opportunity to observe the underlying circumstances.
>
> — *Hansard v. Pepsi-Cola Metro. Bottling Co.*,
>   865 F.2d 1461, 1466 (5th Cir. 1989)

In *Hansard*, an age discrimination case, the Fifth Circuit found no abuse of discretion in admitting a co-worker's lay opinion of an employer's "hiring policy and its general corporate youth movement." *Id.* at 1465-66. Likewise, in *Haun v. Ideal Indus. Inc.*, 81 F.3d 541 (5th Cir. 1996), it affirmed a decision to admit lay opinion testimony that an employer was "deliberately phasing-out older workers." *Id.* at 548. So, to the extent the case defense relies on to the contrary from another circuit, Fifth Circuit case law controls — and it permits such lay

opinions so long as a proper foundation is made [based on observation and helpful].

## MIL No. 4: discrimination against others

To the extent that [employer] contests the admission of evidence of age discrimination against other employees, it misconstrues the law. *There is no proscription of evidence of discrimination against other members of the plaintiff's protected class; to the contrary, such evidence may be highly probative, depending on the circumstances.*

— *Shattuck v. Kinetic Concepts, Inc.,*
49 F.3d 1106, 1109-1110 (5th Cir. 1995)

Anecdotal evidence of discrimination against other employees can establish that an employer's reasons for an adverse act are a pretext for discrimination—it can prove motivation. On a limine motion, none of it should excluded without specifics. *See Govea v. CB&I LLC*, No. 22-CV-01328, 2024 WL 4537150, at *3 (W.D. La. Oct. 21, 2024) ("Defendant argues that any evidence of anecdotal employment-related problems of non-similarly situated employees or former employees is not relevant.... *Defendant provides no specifics as to what it maintains should be excluded*. As such, the Court cannot determine at this juncture whether the purported evidence is relevant and again hesitates to make such a blanket exclusion.").

## MIL No. 5: other suits or claims

Commentary, testimony, and/or documentary evidence regarding other claims, judgments, actions, or charges against Defendant.... *The Court cannot judge the potential admissibility of the unspecified evidence Defendants seek to exclude at this point and declines to enter a blanket order.*

> — *Govea v. CB&I LLC*, No. 22-CV-01328,
> 2024 WL 4537150, at *4 (W.D. La. Oct. 21, 2024) (citing cases)

"Another court in this circuit has recently noted that, 'me too' evidence by a fellow employee may prove relevant as to whether an employer discriminated or retaliated against the plaintiff—particularly when it is close in time to the events of the case and involves the same decision makers." *Id.* So, a blanket pretrial prohibition is inappropriate.

## MIL No. 6: statements to plaintiff

Hearsay is not a proper general subject of a limine motion. Statements can be excluded as non-hearsay. Statements may fit one of the many exceptions to hearsay. So, "what anyone employed by or formerly employed by Shell may have told Plaintiff regarding any conduct by Shell or related to Plaintiff's claims against Shell" — may not be hearsay at all. Or may not be inadmissible hearsay. So, without context, limine is inappropriate.

## MIL No. 7: reference to expert opinions

Barring parties from even mentioning admitted expert opinions is non-sensical, without context. For example, it may be that someone is an expert in some topic, is not a designated consulting or testifying expert, but whose opinion could still be referenced at some point in trial. Without context, limine is inappropriate.

## MIL No. 8: Shell missing documents

Robert Dedmon's counsel does not intend to accuse Shell of *intentionally* destroying documents. We anticipate, however, that missing documents will come up at trial. Missing documents to date include, but are not limited to,

(1) at the time, Shell Hiring Manager Sri Rangan's EEO report,

(2) documents showing what, if anything, Shell did in connection with any EEO report investigation, including results,

(3) any communications before March 31, 2014 about the hiring for the two posted JG5 positions,

(4) pay data for the only other black member of the sales team in the last 10 years,

(5) pay data for the white female [Meredith Lilly] who declined the 2014 JG5 job offered to Mr. Dedmon at JG6 but later joined the same sales team;

(6) pay data for other members of the same inside sales team;

(7) pay data since the last and only production of pay data for anyone on the inside sales team with Mr. Dedmon.

Shell had a duty to preserve these documents when Manager Sri Rangan filed her report. *See* 29 CFR 1602.14 [Preservation of records made or kept]. "When the duty arises, even information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted." *Ringers Techs. Llc v. Harmer*, No. 4:18-CV-4347, 2020 U.S. Dist. LEXIS 204861, 2020 WL 6385813, at *2 (S.D. Tex. Aug. 17, 2020), *rep. & rec. adopted*, 2020 U.S. Dist. LEXIS 202569, 2020 WL 6384349 (S.D. Tex. Oct. 30, 2020). Shell's failure to preserve the documents would meet the standard for imposing Rule 37 (e) sanctions. *See* Fed. R. Civ. P. 37(e); *Villalon v. Cameron Cty.,* Civil Action No. 1:15-cv-00161, 2017 U.S. Dist. LEXIS 222483, at *7 (S.D. Tex. June 22, 2017).

## MIL No. 9: racism Robert Dedmon experienced as a child

There is no basis for Shell's request to exclude any reference to the bullying and racism Mr. Dedmon experienced in his past. This evidence goes straight to Mr. Dedmon's state of mind. It is relevant background testimony to explain Mr. Dedmon's reaction to Shell's discrimination, and thus his compensatory damages. It also demonstrates Mr. Dedmon's likelihood of prompt action in the face of discrimination—relevant to the issue of estoppel. *See* Fed. R. Evid. 401

advisory committee's notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.") (emphasis added); *see also Henderson v. Pappas Trucking LLC AG Container*, No. 2:21-cv-2088, 2024 U.S. Dist. LEXIS 214539, at *2-4 (S.D. Ohio 2024) (Denying defendant's motion in limine that others discriminated against plaintiff as this was relevant background evidence demonstrating plaintiff's reaction to defendant's discrimination).

## MIL No. 10: racism Robert Dedmon experienced at any time

This motion in limine is nearly identical to defendants' motion in limine number 9, except it is even more broad. Defendants provide no basis to exclude this evidence. It is relevant background testimony to explain Mr. Dedmon's reaction to Shell's discrimination, and thus his compensatory damages. It also demonstrates Mr. Dedmon's likelihood of prompt action in the face of discrimination—relevant to the issue of estoppel. *See* Fed. R. Evid. 401 advisory committee's notes ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.") (emphasis added); *see also Henderson v. Pappas Trucking LLC AG Container*, No. 2:21-cv-2088, 2024 U.S. Dist. LEXIS 214539, at *2-4 (S.D. Ohio 2024) (Denying defendant's motion in limine

that others discriminated against plaintiff as this was relevant background evidence demonstrating plaintiff's reaction to defendant's discrimination).

## MIL No. 11: opinions about motive

As noted above, lay opinions on motive are not per se inadmissible. Without context, limine is inappropriate. And Mr. Dedmon intends to offer motive evidence beyond race — *i.e.*, reasons *why* Defendants would discriminate based on race. And defense does not address that kind of motive evidence.

## MIL No. 12: other lawsuits

As with no. 5, a blanket pretrial prohibition is inappropriate. Foreseeability is fair game on liability and punitive damages.

## MIL No. 13: discrimination against others

As with No. 4, and *Shattuck*, a blanket pretrial prohibition is inappropriate. The cases defense cite do not make blanket prohibitions appropriate. Because they depend on context. And the *reason* for proffer. For example, even when propriety of a proffer to prove discrimination may depend on similarity, the proffer may be for other reasons. Like impeachment. Or pretext.

## MIL No. 14: uncalled witnesses

Defense cites no precedent about commenting on the availability or witnesses. Defense cites no specific uncalled witness. "[A] party's failure to call

available witnesses or produce evidence that would clarify or explain disputed factual issues can give rise to a presumption that the evidence, if produced, would be unfavorable to that party." *United States v. Wilson*, 322 F.3d 353, 363 (5th Cir. 2003). "There is, however, an important exception to the applicability of the presumption: if the witness is 'equally available' to both parties, any negative inference from one party's failure to call that witness is impermissible." *Id.* at 364 n.14. In short, it depends on context and should not be resolved pretrial out of context.

## MIL No. 15: reference to Shell's wealth

Robert Dedmon's counsel does not intend to elicit any testimony that aims to reference the parties' financial differences. We do plan to reference Shell's net worth, as the Fifth Circuit has made clear that "[t]he purpose of punitive damages … is to punish a tortfeasor and such award necessarily includes a consideration of his net worth." *State Farm Mut. Auto. Ins. Co. v. Daughdrill*, 769 F.2d 1070, 1074 (5th Cir. 1985); *see also Lindsley v. TRT Holdings Inc.*, Civil Action No. 3:17-CV-2942-X, 2023 U.S. Dist. LEXIS 244734, at *18 (N.D. Tex. 2023) (denying a defendants' motion in limine prohibiting plaintiff "from commenting, arguing, or eliciting testimony suggesting or relating to differences in financial abilities of the parties or Defendants' net worth.").

**MIL No. 16: assertions of objections to discovery requests**

The parties agree in substance to the Court's standard MIL on this issue and will amend the JPTO so reflect same.

**MIL No. 17: probable testimony of absent witnesses**

This is premature. The parties may not know who will be absent. Openings may mention expected testimony of a witness who subsequently is unavailable.

**MIL No. 18: failure to call an equally available witness**

Refer to MIL 14.

**MIL No. 19: reference to law**

Mr. Dedmon should be able to reference, and must reference, the laws under which he is suing. He may simplify language for the jury and then tie to the jury charge. But, as just one small example, he *must* address the law in connection with proving punitive damages.

**MIL No. 21: articles regarding experiences of black employees**

Defense has itself put at issue these experiences. In their amended answer, they contend they acted "in good faith." First Amended Answer [ECF No. 15] at p. 13. They contend they "made good faith efforts to comply with all applicable laws at issue." *Id.* at p. 15. They contend they "took reasonable care to prevent and promptly correct any discriminatory behavior." *Id.* at p. 17. So, in

all of these statements, they themselves put what they knew about discrimination at Shell (and when) at issue. Reports of the experience of black employees—whether publicly via articles or internally—goes to those issues that defense itself raised.

## MIL No. 22: other employee complaints of discrimination

As with Nos. 4 and 13, and *Shattuck*, a blanket pretrial prohibition is inappropriate. Besides, the breadth of this would bar testimony of Hiring Manager Sri Rangan about the discrimination at the core of this case.

## MIL No. 23: other Shell entity lawsuits

As with nos. 5 and 12, a blanket pretrial prohibition is inappropriate. The policy at issue—which Shell denies having—is confirmed by HR. A reasonable juror could find it is applicable throughout various entities. Proof of the existence of such policy might include its revelation in lawsuits against other subsidiary or sister or related entities. Besides, as noted above, defense puts its knowledge [what it knew about discrimination and when] directly at issue.

## MIL No. 24: witnesses

There is no basis for wholesale excluding witnesses just because now or ever worked for a Shell entity that is not a party to this lawsuit. After all, the HR folks who set discriminatory standards for pay in this case also set standards

for several Shell entities and perhaps all US Shell entities in light of a claimed global pay policy.

**MIL No. 25: reference to Shell's sales**

This motion in limine is nearly identical to defendants' motion in limine number 15. Mr. Dedmon's counsel presently does not intend to not make reference to Shell's ability to litigate—defense might open this door. As this relates to Shell's sales, Mr. Dedmon and his co-workers held sales positions. It is anticipated that Mr. Dedmon and other witnesses involved in sales will testify to the sales that they made for Shell, including their relative gross margins for each year. Shell's performance reviews and underlying performance review data also reference sales made and retail values that team members were tasked with securing.

Additionally, Shell's net worth is relevant to punitive damages, as the Fifth Circuit has made clear that "[t]he purpose of punitive damages . . . is to punish a tortfeasor and such award necessarily includes a consideration of his net worth." *State Farm Mut. Auto. Ins. Co. v. Daughdrill,* 769 F.2d 1070, 1074 (5th Cir. 1985); *see also Lindsley v. TRT Holdings Inc.,* Civil Action No. 3:17-CV-2942-X, 2023 U.S. Dist. LEXIS 244734, at *18 (N.D. Tex. 2023) (denying a defendants' motion in limine prohibiting plaintiff "from commenting, arguing, or

eliciting testimony suggesting or relating to differences in financial abilities of the parties or Defendants' net worth.").

## MIL No. 26: hearsay

Limine motions are not intended to just mirror evidentiary rules. E.g., "exclude all hearsay." That is what this limine does and denial is appropriate for that reason. Besides, it is premature and out of context and identifies no specific statement or evidence to which it would apply.

## MIL No. 27: other claims unasserted

As defense apparently challenges the applicability of equitable estoppel to its limitations defense, it puts at issue what claims a plaintiff knew about and when. So, blanket pretrial limine is inappropriate.

## MIL No. 28: claims not included in charge of discrimination

The Section 1981 claims asserted here have no administrative prerequisite—so trying to limine out reference to claims not in the charge is an attempt to bar all evidence on those claims, even though they are not required to be in a charge. So, blanket pretrial limine is inappropriate.

Respectfully submitted,

*/s/ Amy Gibson*

_____

Ms. Amy E. Gibson
Attorney-in-Charge
Texas State Bar No. 00793801
Southern District Bar No. 20147
amy@gwfirm.com

Mr. David L. Wiley
Of Counsel
Texas State Bar No. 24029901
Southern District Bar No. 34134
david@gwfirm.com

Gibson Wiley PLLC
1500 Jackson Street #109
Dallas, Texas 75201-4923
T: (214) 522-2121
F: (214) 522-2126

*and*

Ms. Amanda C. Hernandez
Of Counsel
Texas State Bar No. 24064411
Southern District Bar No. 1531045
amanda@ahfirm.com

AH Law, PLLC
5718 Westheimer, Suite 1000
Houston, Texas 77057
T: (713) 588-4359
F: (281) 572-5370

*Attorneys for Robert Dedmon*

## CERTIFICATE OF COMPLIANCE

The following is based on the word-count tool in the most current version of Microsoft® Word for Mac. The undersigned certifies that the foregoing motion contains 3436 words, *including* the case caption, the signature block, and all certificates.

*/s/ Amy Gibson*

Amy E. Gibson

## CERTIFICATE OF SERVICE

The undersigned certifies that, on February 28, 2025, she filed the foregoing *response* with the United States District Court for the Southern District of Texas through the CM/ECF system, such that the Shell Defendants should be served with a copy of the filed document as follows:

**VIA CM/ECF SYSTEM**
Ms. Marlene C. Williams
marlene.williams@ogletree.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
500 Dallas Street #2100
Houston, Texas 77002
T: (713) 655-5769

*Attorneys for Shell Defendants*

*/s/ Amy Gibson*

Amy E. Gibson

**Subject:** Dedmon v Shell
**Date:** Friday, February 28, 2025 at 10:18:24 AM Central Standard Time
**From:** Amy Gibson <amy@gwfirm.com>
**To:** Williams, Marlene C. <marlene.williams@ogletree.com>
**CC:** David Wiley <david@gwfirm.com>, Amanda Hernandez <amanda@ahfirm.com>
**Attachments:** image001.jpg

Marlene,

Do you have a date by which we can expect production of the following pay records that we need to calculate damages?

1 2014 pay records for the inside sales team members other than Robert — Shell only provided 2014 pay for Robert

2 pay records for Raif Rucker while Raif was on the same inside sales team as Robert; again, we believe Raif was the only other black employee on the inside sales team in the last 10 years

3 pay records for Meredith Lilly while Meredith was on the same inside sales team as Robert; again, we now believe Meredith is the white female who in 2014 was offered the inside sales position at JG5 and rejected the offer, but later joined the inside sales team and sat next to Robert

4 pay records for Justin Mody and Jim Promubol from 2014 forward for the time Justin and Jim were on the same inside sales team as Robert

5 supplemental pay records through October 22, 2024 [last day of work for Robert]; for inside sales team members for whom Shell produced pay records, Shell only provided pay records through part of 2023

Amy Gibson
Gibson Wiley PLLC
T: (214) 522-2121
F: (214) 522-2126
M: (214) 417-9233
E: amy@gwfirm.com



**Subject:** FW: Dedmon v Shell: documents still owed, damages calculations, depositions
**Date:** Sunday, February 16, 2025 at 7:04:45 PM Central Standard Time
**From:** Amy Gibson <amy@gwfirm.com>
**To:** Williams, Marlene C. <marlene.williams@ogletree.com>
**CC:** Amanda Hernandez <amanda@ahfirm.com>, David Wiley <david@gwfirm.com>
**Attachments:** image001.png, image002.png, image003.jpg

Marlene,

Please respond or let's add this to the JPTO conference items.

Amy Gibson
Gibson Wiley PLLC
T: (214) 522-2121
F: (214) 522-2126
M: (214) 417-9233
E: amy@gwfirm.com

**From:** Amy Gibson <amy@gwfirm.com>
**Date:** Saturday, February 8, 2025 at 2:05 PM
**To:** Williams, Marlene C. <marlene.williams@ogletree.com>
**Cc:** Amanda Hernandez <amanda@ahfirm.com>, David Wiley <david@gwfirm.com>
**Subject:** FW: Dedmon v Shell: documents still owed, damages calculations, depositions

Marlene,

I never received a response to my email below. I am giving Shell another opportunity to cure the issues addressed below without our side having to seek exclusion of argument or evidence or seek other appropriate remedies based on lack of production. All parties agreed that the information was necessary to calculate damages and was necessary before depositions were to take place.

We still do not have the documents promised to us the week of June 3. We still do not have pay data needed to calculate damages.

For example, we only have 2014 pay data for Robert.
As another example, we have zero pay data for Meredith Lilly, Raif Rucker, Justin Mody, and Jim Promubol.
We also need updated pay data for all team members due to the passage of time.

For Raif Rucker, we believe he was also underpaid as the only other black person on this inside sales team within the last decade. So, we need Raif Rucker's pay data for this additional reason.

Amy Gibson
Gibson Wiley PLLC
T: (214) 522-2121
F: (214) 522-2126
M: (214) 417-9233
E: amy@gwfirm.com

---

**From:** Amy Gibson <amy@gwfirm.com>
**Date:** Tuesday, December 10, 2024 at 2:38 PM
**To:** Williams, Marlene C. <marlene.williams@ogletree.com>
**Cc:** David Wiley <david@gwfirm.com>, Amanda Hernandez <amanda@ahfirm.com>
**Subject:** Dedmon v Shell

Marlene,

Checking on production of documents promised the week of June 3. I do not know what your side intended to produce, but we still do not have those documents. And, separately, we still do not have documents that would track over time even the basics on qualifications, performance, job grades, and pay, even on Robert's team. Examples include Meredith Lilly, Raif Rucker, Justin Mody, and Jim Promubol.

This is from a joint filing in this case:

**unanticipated issues with rolling production & need to cure prejudice**

The rolling production has not ended in the time frame all parties previously anticipated. The parties agree on the need for a hard end date to rolling production. The Shell Defendants proposed a June 3, 2024 end date to the rolling production, and Robert agreed. The parties also then agreed to use June 3, 2024 as the end date for all document production from both sides, other than appropriate supplementation.

The remaining rolling production is highly material. It includes the formal performance reviews, filling gaps in compensation documents produced so that Robert can complete and produce damages calculations, document retention policies, and known addresses for certain witnesses. It may also include any additional relevant compensation and performance information that is located.

All parties' attorneys need this important information (1) to value the pleaded compensation loss or to calculate damages, (2) to make decisions about who needs to be deposed and who does not need to be deposed, (3) to prepare and then confer on a complete set of 30(b)(6) topics, (4) to schedule and complete depositions, (5) to make informed settlement decisions, and (6) to assess and prepare motions if appropriate after analysis of the foregoing.

We still want the documents before taking limited depositions. Absent a load of nonresponsive answers, I anticipate no more than 4 days for depositions. Perhaps less.

Amy Gibson

Gibson Wiley PLLC
T: (214) 522-2121
F: (214) 522-2126
M: (214) 417-9233
E: amy@gwfirm.com

