# Exhibit 1

*Initial discovery letters*



April 29, 2025

**Via Email**

Ms. Marlene Williams                                                                                   **outstanding discovery part 1**
Ogletree Deakins
500 Dallas Street, Suite 2100
Houston, Texas 77002
marlene.williams@ogletree.com

> Re:    *Robert Dedmon v. Shell Exploration & Production Co., et al.*,
>        No. 4-21-cv-03371 (S.D. Tex.)

Dear Marlene:

We had a medical emergency last week that required my care and attention and put me behind. I am going back through the parties' communications to compile a list of outstanding discovery that we previously discussed. This letter is part 1 and addresses what was addressed at the pretrial hearing and on which we conferred well before the pretrial hearing.

**1.     Raif Rucker compensation records**
Defense produced no documents for Raif Rucker, the only other black person on the same inside sales team with Robert at any time during Robert's employment.

**2.     Meredith Lilly compensation records**
Defense produced no documents for Meredith Lilly, who is white and worked on the same inside sales team with Robert for a period of time.

**3.     Meredith Lilly job offer records**
Meredith Lilly is the white female who (1) was offered an inside sales position at JG5 in 2014 and (2) was offered an inside sales position at JG5 or better in 2015.

Sincerely,

*/s/ Amy Gibson*

Amy E. Gibson



April 30, 2025

**Via Email**

Ms. Marlene Williams                                                                                 **outstanding discovery part 2**
Ogletree Deakins
500 Dallas Street, Suite 2100
Houston, Texas 77002
marlene.williams@ogletree.com

       Re:    *Robert Dedmon v. Shell Exploration & Production Co., et al.*,
              No. 4-21-cv-03371 (S.D. Tex.)

Dear Marlene:

    Again, I am going back through the parties' communications to compile a list of outstanding discovery. This letter is part 2.

### 4.   promised production and supplemental discovery responses

🔵We still don't have promised documents or supplemental discovery responses that were to be provided the week of June 3, 2024.



🔵We still don't have promised discovery that allows us to track the basic career trajectory — qualifications, performance, and pay — for members of the inside sales team on which Robert worked. You let me know Shell does not keep personnel files, so we cannot do what we normally would and look to personnel files to track career from hire forward. I let you know we needed to track basic career trajectory — qualifications, performance, and pay —, but we did not need every paystub or

Ms. Marlene Williams
April 30, 2025
Page 2 of 4

every piece of paper documenting the same information. If you don't recall what we discussed on what paystubs we need for each person, let me know.

Team members for whom we still have either no such documents or very few such documents are Jim Promubol, Meredith Lilly, Raif Rucker, Justin Mody, Thomas Jones, Logan Luzzi, Ken Ueng, Jim Barker, Thomas Jones, and Danira. I only recently learned that Danira was a member of the team, although the team did not know it because Danira was excluded and not even permitted to sit with the team.

We still have no 2014 pay records for anyone other than Robert and no updated pay records for anyone on the team since last production.

We still have none of the following for team members other than Robert — inside sales hiring application and resume, job grade change forms for each job grade change, any application, interview notes, and shell decision matrix for each job grade change, the annual power gross margin numbers for each team member, the annual gas gross margin numbers for each team member.

## 5.   depositions

The parties in an April 16, 2024 joint filing noted the need for the additional production for purposes of damages calculations and depositions, among other things, as shown on the following pages:

Ms. Marlene Williams
April 30, 2025
Page 3 of 4

> Case 4:21-cv-03371   Document 29   Filed on 04/16/24 in TXSD   Page 1 of 11
>
> UNITED STATES DISTRICT COURT
> SOUTHERN DISTRICT OF TEXAS
> HOUSTON DIVISION
>
> | Robert Dedmon, | § | |
> |---|---|---|
> | | § | |
> | *Plaintiff*, | § | CIVIL ACTION NO. 4:21-cv-03371 |
> | | § | |
> | vs. | § | Jury Demand |
> | | § | |
> | Shell Exploration & Production Company and Shell Trading Services Company, | § § § | |
> | | § | |
> | *Defendants*. | § | |
>
> **JOINT MOTION TO MODIFY SCHEDULING ORDER
> AND CONTINUE JURY TRIAL SETTING**

> The remaining rolling production is highly material. It includes the formal performance reviews, filling gaps in compensation documents produced so that Robert can complete and produce damages calculations, document retention policies, and known addresses for certain witnesses. It may also include any additional relevant compensation and performance information that is located.
>
> All parties' attorneys need this important information (1) to value the pleaded compensation loss or to calculate damages, (2) to make decisions about who needs to be deposed
>
> 7

Ms. Marlene Williams
April 30, 2025
Page 4 of 4

> and who does not need to be deposed, (3) to prepare and then confer on a complete set of 30(b)(6) topics, (4) to schedule and complete depositions, (5) to make informed settlement decisions, and (6) to assess and prepare motions if appropriate after analysis of the foregoing.

We still plan to schedule depositions and confer on 30(b)(6) topics once we have the discovery.

Sincerely,

*/s/ Amy Gibson*

Amy E. Gibson



May 1, 2025

**Via Email**

Ms. Marlene Williams  **outstanding discovery part 2(a)**
Ogletree Deakins
500 Dallas Street, Suite 2100
Houston, Texas 77002
marlene.williams@ogletree.com

      Re:    *Robert Dedmon v. Shell Exploration & Production Co., et al.*,
              No. 4-21-cv-03371 (S.D. Tex.)

Dear Marlene:

    Again, I am going back through the parties' communications to compile a list of outstanding discovery. This letter is part 2(a) — a supplement to yesterday's part 2.

### 4.    supplement — promised production and supplemental discovery responses

This is a supplement to what I sent you yesterday under the same item 4 subject.

🔵At the pretrial hearing, you said you were working on additional documents to produce. We still don't have those documents, nor do we know anything about what those documents are.

🔵Again, we still don't have promised discovery that allows us to track the basic career trajectory — qualifications, performance, and pay — for members of the inside sales team on which Robert worked. Yesterday, I listed the basic documents we had discussed that would allow this tracking [since there are no personnel files that would typically include this kind of information]. I inadvertently omitted these: team member gross margin targets [numeric goals] for each year, team member rankings, individual development plans, commendations, discipline, and supervisor memos and notes to the file about job performance, bonuses, or pay.

Although defense produced a spreadsheet with some ranking and performance data, the data is not accurate, and we believe the data may have been intentionally altered. For example, Tickle appears to have reduced Dedmon's gross margin by millions and appears to have inflated Deley's gross margin. Also, the team manager does not set the final rankings.

So, on rankings, we are looking for (a) the rankings sent from lower level management to upper level folks for approval, (b) the communications explaining ranking changes [*e.g.*, the emails on Patrick Frnka struggling to meet his goals as reason for rank change], and (c) the final approved

Ms. Marlene Williams
May 1, 2025
Page 2 of 2

rankings. I expect the ranking information will only be a handful of documents in each year. If you think it's more than that, let's discuss.

    Again, we do not need every piece of paper that has the same information. And again, based on what we know about the organization, operations, and record-keeping, the outstanding discovery should be easy to access and produce. If you encounter any issues, please contact me so we can work together through the issue.

    If you have any questions about what certain documents are or what we are seeking, please contact me, and I would be happy to help. *E.g.*, we previously discussed what documents would track qualifications, performance, and pay; a simple, one-page form documents a job grade change; a one-page screenshot shows each team member's annual gross margin for power.

                                    Sincerely,

                                    */s/ Amy Gibson*

                                  Amy E. Gibson

**Gibson Wiley PLLC**
ATTORNEYS & COUNSELORS AT LAW

May 2, 2025

**Via Email**

Ms. Marlene Williams                                                     **outstanding discovery part 3**
Ogletree Deakins
500 Dallas Street, Suite 2100
Houston, Texas 77002
marlene.williams@ogletree.com

      Re:    *Robert Dedmon v. Shell Exploration & Production Co., et al.*,
              No. 4-21-cv-03371 (S.D. Tex.)

Dear Marlene:

    Again, I am going back through the parties' communications to compile a list of outstanding discovery. This letter is part 3 and the last.

    I realize we had a medical emergency last week and it took me some time to go through our prior discussions on discovery. So, please let me know what you believe is a reasonable deadline for your side to (1) produce to us the agreed discovery and (2) state your position on other discovery issues.

**5.**    **disputed or defense never responded**

These are discovery matters about which defense would not agree or you said defense would get back to us with an answer but never did. Our plan had been to analyze the agreed production from defense and then move to compel on remaining disputes. You said your side would not oppose leave to file a motion to compel.

🔵The following is a disputed discovery issue. We understand that race-based pay disparities existed on both sides of Shell Trading — inside sales and energy trading teams that worked together. We believe Sean Matthews [black] was paid less than white peers Gary Weems and Clayton Luskie from 2018 through 2022, despite Matthews' higher money generated for Shell. After hire and during his employment, Sean Matthews also had a similar issue with job grades when two white peers were given better job grades and Matthews was given the lower job grade — the move for all 3 was in the same timeframe, and there was again some job grade excuse for giving the black employee the lower job grade while moving forward with giving white peers the better job grade. Luis Lugo has testified about lower pay for himself [POC] on bonuses and gives an example of being paid less than 1/3 of bonuses paid to white and Asian employees for the same role [Dec. ¶ 19]. Lugo also testified about a lower bonus compared to Tim Hood [white] despite closely matched team performance numbers on money generated for Shell [Dec. ¶ 20].

Ms. Marlene Williams
May 2, 2025
Page 2 of 3

So, we seek the same basic data sought for the inside sales team on which Dedmon worked to track qualifications, performance, and pay for Sean Matthews, Gary Weems, and Clayton Luskie, including their annual money-generation numbers akin to the annual gross margin numbers for inside sales, but limited to 2018-2022. We seek the team money-generation numbers for Luis Lugo and Tim Hood and their bonus amounts as managers. And we seek bonus amounts and money-generation numbers [again, akin to annual gross margin numbers for inside sales] for the team on which Lugo worked before replacing Tim Hood as manager.

🔵The following are issues on which I do not recall defense ever responding with yes, will produce, or no, will not produce.

Any additional documents reviewed or relied upon [or sent, received, or generated] in connection with the 2014 JG decision for Dedmon, 2015 JG decision for Dedmon, 2021 JG decision for Dedmon. Here are some examples indicating more documents exist. Teri Olmen emails refer to a March 1 promotion for Amanda Hardcastle in Canada. Surely there is a document showing the decision date and effective date for the Amanda Hardcastle promotion in Canada, her before-and-after job grades, and presumably her assigned team or supervisor. Looks like there should be a document with names, positions, and job grades for those working on the Houston and San Diego inside sales teams in 2014 before Dedmon is hired. An email refers to "a transfer to another Shell business unit." Seems there should be a document showing who this was, decision date, effective date, before-and-after job grades, and presumably the assigned team or supervisor. And is there a written policy on the spread of total job grades as alluded to in emails? The Shell pay policies provided to us do not have this. Was there another job study done — *i.e.*, is there another document on the JG spread for San Diego and Houston inside sales or was the 2014 JG spread applicable through 2024. Is there a document showing the JG spread that is mentioned in an email?

On how salary and job grades are decided — (1) pay ranges for each job grade at issue [JG3 through JG6] for each year 2014-2024; (2) names, positions, and job grades for those working on the Houston and San Diego inside sales teams 2014 through 2024 [showing alignment or not with claimed JG spread]. I note the following. We believe a similar situation happened with Raif Rucker on job grades. Meredith Lilly [white] was hired in 2015 at JG5 despite a claimed lack of JG5 spots at the time, while Raif Rucker [black] was hired in 2015 at about the same time at JG6.

Reconsideration of general and prophylactic objections to discovery, and compliance with this part of Rule 34 on document requests: "An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." I only need this for requests where defense decided to provide some documents despite objections. I do not need this if there is wholesale objection to a request and nothing provided.

🔵The following are documents that defense said it could not locate or did not have, and I am just following up to make sure that is still the case:

EO report — Sri Rangan EO report about discrimination against Robert Dedmon

Ms. Marlene Williams
May 2, 2025
Page 3 of 3

Any EO report investigation, recommendations, and results — if there was an investigation or recommendations or action taken in response to the Rangan EO report, those documents

Pay audits that include the team on which Dedmon worked — if there were any, those documents. Recall we discussed our side's preliminary understanding that Shell pay audits are not unit by unit as opposed to one larger audit. So, we agreed defense could redact the rest except the business unit names, in case there was disagreement on whether the other business unit audits are discoverable. But ultimately, you said there were no pay audits that included the inside sales team on which Dedmon worked. Checking to make sure that remains accurate.

Happy to discuss any of this. I believe Shell HR should have all of the documents addressed in this letter. Erica Williams was one HR person handling the EO issue. We believe her title was *US Diversity, EEO, and Inclusion Advisor*. I believe the Shell Resolve Program also got a copy of the Rangan EO report. If you run into any obstacles or problems or need information from us, please contact me so we can work through the issues together.

Sincerely,

*/s/ Amy Gibson*

Amy E. Gibson