IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ROBERT DEDMON** | § § § | |
| **Plaintiff,** | § § | **CIVIL ACTION NO. 4:21-cv-03371** |
| v. | § § § | |
| **SHELL EXPLORATION & PRODUCTION COMPANY AND SHELL TRADING SERVICES COMPANY** | § § § § § § | |
| **Defendants.** | § § | |

### DEFENDANTS' RESPONSE REGARDING PLAINTIFF'S MOTION TO REINSTATE CLAIMS AND ENFORCE SETTLEMENT AGREEMENT & ALTERNATIVE MOTION TO REINSTATE CLAIMS AND PLACE CASE BACK ON JURY TRIAL DOCKET

Defendants respectfully submit this Response to Plaintiff's Motion to Reinstate and Enforce Settlement Agreement & Alternative Motion to Reinstate Claims and Place Case Back on Jury Trial Docket. In support, Defendants respectfully show as follows:

1. This is an employment dispute where Plaintiff claims that Defendants discriminated against him based on his race and color in connection with his compensation and job grade, and a job promotion in 2021.

2. As a preliminary matter, Defendants maintain that the parties resolved this case and Defendants have never refused to move forward with the settlement or

indicated any intent not to pay Plaintiff in accordance with their agreement. Rather, as demonstrated below, the Parties are ultimately before the Court because they have been unable to reach an accord regarding a couple of terms in the draft settlement agreements they have circulated. Thus, to the extent Plaintiff's motions suggest to the Court that Shell has reneged on paying the settlement funds or has otherwise refused to honor the Parties' settlement, that is simply incorrect.

3. The Parties first mediated this case with Gloria Portela on December 31, 2024, but the case did not settle at the time.

4. The Parties attended mediation for a second time on June 12, 2025, and again did not reach a settlement. Following the second mediation, Ms. Portela made a mediator's proposal, but a settlement was not reached with that proposal.

5. Subsequently, on or about June 27, 2025, Shell communicated with Ms. Portela and made a final settlement offer to Plaintiff, which he accepted on or about July 2, 2025. In all of Defendants' communications with the mediator, Defendants' settlement offers were contingent on Plaintiff signing a confidential settlement agreement that included a general release, among other terms.

6. On July 2, 2025, Defendants asked Plaintiff to provide a proposed breakdown regarding allocation of the settlement funds and notified Plaintiff that Defendants would require the completion of payment processing forms in order to

process the settlement. In the interim, Defendants prepared a proposed draft settlement agreement to later circulate to Plaintiff.

7. More than one month later, on or about August 14, 2025, Plaintiff sent a draft settlement agreement that included his proposed breakdown for the settlement payment, which included six (6) different payments for the settlement funds – three to Plaintiff and three to Plaintiff's counsel – and demanded payment by August 29, 2025. That same day, Defendants notified Plaintiff that August 29, 2025, was not feasible and that Defendants would comment on Plaintiff's proposed draft agreement separately.

8. On August 20, 2025, Defendants followed up with Plaintiff and asked if Plaintiff would accept wire payments as opposed to the checks contemplated in Plaintiff's draft settlement agreement. Plaintiff responded on August 25, 2025, and August 26, 2025, to confirm that Plaintiff agreed to wire payments, but indicated that Plaintiff would send the information at a later time because he did not want wire instructions in "circulating documents."

9. On August 21, 2025, Defendants notified Plaintiff that they would agree to Plaintiff's proposed breakdown of the settlement funds, including three separate payments to Plaintiff and three payments to Plaintiff's counsel. Defendants also confirmed that no banking information would be included in the settlement agreement, asked Plaintiff for W-9 forms which Plaintiff had not provided, and

notified Plaintiff that Defendants would forward additional payment processing forms required by Defendants' finance team to process the payments.

10. On August 28, 2025, Defendants circulated a revised draft of the agreement, which included terms Defendants communicated to Ms. Portela as part of the settlement, including a general release and confidentiality provisions. Plaintiff responded the next day indicating that he refused to redline Defendants' draft because it included "new material terms."

11. On September 11, 2025, Plaintiff sent W-9 forms to Defendants. Plaintiff sent an updated draft agreement on October 10, 2025, which largely ignored the revisions Defendants made. Defendants sent the payment processing forms to Plaintiff on October 29, 2025, and subsequently received a complaint from Plaintiff that the forms required Plaintiff to "falsely" identify himself as a Shell vendor or supplier.

12. On November 10, 2025, Defendants responded to clarify the payment processing forms, including to explain that Plaintiff would not be falsely identified as a vendor or supplier despite the generic title of the payment processing forms, and that Defendants used this in all cases to process settlement payments. Defendants also notified Plaintiff that they had reached out to Ms. Portela in order to get assistance from her, as the mediator, regarding some of the settlement terms; however, Defendants were informed that Ms. Portela would be unavailable for the

foreseeable future. Counsel for the parties had a call the same day to discuss the disputed terms. During that call, Defendants' counsel asked if Plaintiff would consider a compromise regarding the disputed issues. Plaintiff's counsel expressed Plaintiff's disagreement with Defendants' proposed terms but indicated that she would ultimately have to confer with Plaintiff to confirm if there was some possible compromise.

13. On November 21, 2025, Plaintiff produced the payment processing forms to Defendants.

14. On November 25, 2025, Plaintiff sent an updated draft of his proposed settlement agreement that included a new proposal regarding confidentiality, among other things.[1] Despite his recent updated draft, on November 24, 2025, and November 26, 2025, Plaintiff inquired whether Defendants were opposed to a motion to enforce the settlement agreement, a motion to reinstate, and/or a motion to place the case back on the trial docket. Defendants notified Plaintiff that they were reviewing Plaintiff's updated draft of the settlement agreement and anticipated that Defendants would be able to agree to the draft with some minor edits. Defendants notified Plaintiff that they would not likely have an answer by November

---

[1] For example, Plaintiff's original draft agreement included recitals. Defendants made proposed revisions to those recitals, which Plaintiff refused to accept. Plaintiff later proposed that the Parties provide separate recitals, which Defendants thought was unwarranted and, frankly, unusual. In the updated draft Plaintiff provided on November 25, 2025, Plaintiff agreed to forego most of the recitals, as well as the idea of separate recitals, and proposed a more streamlined set of recitals, to which Defendants have agreed.

28, 2025, due to the Thanksgiving holiday. Plaintiff filed his motion on November 28, 2025.

15. In the interim, Defendants have reviewed Plaintiff's updated draft settlement agreement (from November 25, 2025) and has sent Plaintiff what Defendants believe are reasonable edits to the release and the confidentiality provision, which should resolve the outstanding issues and allow the Parties to finally execute the agreement. With the respect to the release, Defendants have proposed a more general release, as opposed to the limited release Plaintiff has included in his drafts. With respect to the confidentiality provision, Defendants have proposed to remove the time limit Plaintiff included in his last draft and has broadened the scope beyond just the media disclosures Plaintiff has proposed. Finally, consistent with every draft Defendants have shared with Plaintiff, Defendants have clarified that the settlement payment would be made within 45 days of the effective date of the settlement agreement, which is Defendants' standard procedure and is even more reasonable in this case given the number of payments Plaintiff has requested.

16. Thus, as much as Plaintiff tries to attribute fault to Defendants for the delay in finalizing the settlement document, the truth is that there has been a significant and unusual amount of back-and-forth between the Parties regarding what are usually standard settlement terms, and regarding the payment processing

information Defendants need from Plaintiff to properly process the payments. Moreover, Defendants have never indicated an intent not to comply with the settlement and has consistently tried to take reasonable steps to bridge the gap that exists regarding some of the settlement terms outlined in the draft documents. Indeed, as described above, Defendants reached out to the mediator to facilitate a resolution, but Ms. Portela has unfortunately been unavailable, and those efforts have not been successful.

17. Based on this, Defendants have not breached the Parties' agreement to settle any more than Plaintiff has, and there is no basis at this point to enforce the settlement agreement. The Parties have admittedly had unfortunately prolonged discussions about some language and a few final terms for the settlement agreement, but there is no basis to attribute that delay solely to Defendants. It took Plaintiff more than a month to propose an allocation for the settlement payment, and even longer to receive standard W-9 forms related to those proposed allocations.[2] Plaintiff also took almost a month to return the payment processing forms, after Defendants explained the forms to Plaintiff. Thus, if Defendants have failed in any respect to timely advance the settlement, so has Plaintiff.

18. In any event, the circumstances surrounding the Parties interactions to finalize the settlement documents does not warrant enforcement of settlement on the

---

[2] Defendants certainly could not have paid funds without knowing what to pay and to whom.

7

terms described in Plaintiff's motion because Defendants have neither refused to execute a formal agreement for the settlement nor refused to make payment. Defendants respectfully request that the Parties be allowed to finalize the settlement agreement, which they should be able to achieve in light of Plaintiff's recent proposed revisions on November 25, 2025, and Defendants' response proposing just a few reasonable modifications to those terms.

19. Finally, given the Parties' discussions regarding confidentiality, and Plaintiff's acknowledgement in his last draft on November 25, 2025, to at least some confidentiality terms, it was highly inappropriate for Plaintiff to include discussions about the settlement amount in his filings with the Court, as well as the confidential communications with the mediator regarding settlement. Defendants respectfully request that Plaintiff's filings be removed and/or sealed to preserve confidentiality of the mediation process and confidentiality generally.

Respectfully submitted,

*/s/ Marlene C. Williams*
Marlene C. Williams
Attorney-in-Charge
Federal Bar No. 22824
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
500 Dallas Street, Suite 2100
Houston, Texas 77002
(713) 655-0855
(713) 655-0020 (Fax)
marlene.williams@ogletree.com
**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

    I hereby certify that on December 12, 2025, I electronically submitted the foregoing document with the clerk of the court for the U.S. District Court, Southern District of Texas – Houston Division, using the electronic case files system of the court. The electronic case files system sent a "Notice of Electronic Filing" to counsel of record.

                                            */s/ Marlene C. Williams*
                                            Marlene C. Williams